# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | Amy J. St. Eve |
|---|---|---|---|
| CASE NUMBER | 01 C 5746 | DATE | 03/28/2003 |
| CASE TITLE | Cruz v. Perry | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] . Enter memorandum opinion and order. For the attached reasons, the Defendant's motion for summary judgment is GRANTED. All other pending motions are denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | MAR 3 1 2003 date docketed |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | | IS docketing deputy initials |
| | Copy to judge/magistrate judge. | | |
| JHC | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice |
| | | | mailing deputy initials |

Document Number 34

U.S. DISTRICT COURT CLERK
03 MAR 28 PM 3:40

| | |
|---|---|
| MARITZA CRUZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 01 C 5746 |
| v. ) | |
| ) | Judge William J. Hibbler |
| STEPHEN A. PERRY, Administrator, ) | |
| United States General Services Administration, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND ORDER

Maritza Cruz works for the General Services Adminstration (GSA) as a contract specialist. During the course of her employment, Cruz several times asked GSA to allow her to work at home three days a week because she suffered from intermittent, unpredictable migraine headaches. Cruz's supervisors denied her requests, but offered her several other alternatives to accommodate her illness. None of these alternatives satisfied Cruz, and she sued GSA alleging that it had violated the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.*, and the Americans with Disabilities Act of 1990 (ADA), § 42 U.S.C. § 12111, *et seq.* Cruz complains that GSA (1) failed to accommodate her disability when it refused to allow her to work from home; and (2) retaliated against her when she complained about discrimination by transferring her to another position within GSA. GSA moves for summary judgment.

I. Factual Background

Martiza Cruz began working for GSA in November 1977. In September 1995, she became a contract specialist with the Property Management Division of the Contracts Branch of GSA in its

Chicago, Illinois, office. As a contract specialist, Cruz negotiated and prepared government contracts with non-government entities, using the Federal Acquisition Regulations as a guide. GSA expected contract specialists to plan the contracting approach, initiate and manage ongoing contracts, communicate as necessary with other Branches within GSA, and resolve problems that arose in the course of contracting.

In 1990 the Chicago Regional Office of GSA implemented the Flexiplace Program. The Flexiplace Program allows GSA employees who meet certain criteria to work from home instead of in the GSA Office. In order to be eligible for the Flexiplace Program, employees must have a job that could be completed at home and obtain their supervisor's consent. GSA directs supervisors to consider the employee's ability to work at home responsibly, the employee's work history, the employee's motivation for working at home, and the employee's leave usage record. In 1994, Cruz first requested to participate in the Flexiplace Program, but her supervisor at the time, Frank Priore, denied the request.

Two years later, Cruz made a second request to participate in the Flexiplace Program. Cruz informed her supervisor, Debbie Bantz, that the stress of commuting to work and caring for her children and her "debilitating migraines" made her less than fully efficient when she was required to work from the GSA office and suggested that her efficiency would be increased if allowed to work from home three days a week. Bantz denied Cruz's request becuase Cruz was new to her position as a contract specialist and needed three years of on-the-job training before Bantz could consider Cruz for the program. In 1998, Cruz made a third request to participate in the Flexiplace Program based on substantially the same reasons as her 1996 request. Cruz's third request was also denied. Her supervisor, Mary Kennedy, informed Cruz that her "pattern of absenteeism and tardiness" were a

2

factor in the denial of her request.[1] Kennedy also informed Cruz that "the majority of the regional Contract Specialist duties require the individual to be on-site, to have access to contract files, contract computer programs, and team work . . . ." Kennedy did suggest that if Cruz improved her attendance within the next two months, that Kennedy would consider allowing Cruz to work at home one day per week for a 60-day trial period.

Throughout the four-year period during which Cruz made requests to participate in the Flexiplace Program, GSA explored other alternatives to help Cruz with the problems associated with her long commute, her family concerns, and her difficulty with migraine headaches. For instance, Priore and Bantz met with her in 1996 and discussed whether Cruz wished to take advantage of the Family Medical Leave Act or GSA's Employee Assistance Program or work part-time. In 1997, GSA presented Cruz with the opportunity to start work at a later time. In 1998, GSA discussed with Cruz possibly transferring to the Milwaukee field office, where she might be able to work at home, or to another work team that might reduce Cruz's stress. Cruz refused each of the accommodations offered by GSA.

Instead, on October 16, 1998, Cruz filed a EEO formal complaint alleging that GSA had discriminated against her on the basis of her race. According to Cruz, after she filed the complaint her supervisor's began to retaliate against her by "giving [her] unreasonably short deadlines, scrutinizing her, questioning her veracity, embarrassing her in the presence of her co-workers, treating her like a child, and otherwise harassing her." Cruz amended her EEO complaint to include discrimination based on her disability (that she suffered from debilitating migraine headaches) and

---

[1] From 1996-2001 Cruz took 547.2 hours of sick leave, 1102 hours of annual leave, and 1213.7 hours of leave without pay, an average of 57.25 days of leave per calendar year.

a claim that her supervisors retaliated against her for filing the initial EEO complaint. While Cruz's EEO complaint was pending, she made another request to participate in the Flexiplace Program because of the increased frequency of her migraine headaches. GSA denied those requests.

GSA continued to offer Cruz various accommodations. In July 1999, LaVeda Jarrett, GSA's EEO Counselor, offered to transfer Cruz to another Branch within GSA so that she would no longer work for the supervisors who allegedly harassed her. GSA also offered to assign Cruz to the Property Development Division to remove her from the allegedly "hostile working environment." Cruz denied the offers to transfer because she believed that the assignment would not allow her to work at home. In August 1999, Kennedy offered to allow Cruz to work at home three days per week, but from the Milwaukee field office. Cruz refused the offer because she did not wish to drive to Milwaukee because she might experience migraine headaches while driving. In September 1999, GSA involuntarily transferred Cruz to the Property Management Division, for a trial period. The transfer became permanent in September 2000. In November 2001, Cruz's supervisors in the Property Development Division allowed her to begin working at home three days a week under the Flexiplace Program. After the EEOC issued in part a reversal of GSA's final decision of Cruz's EEO complaint, Cruz filed this complaint and GSA now moves for summary judgment.

## II. Standard of Review

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All facts and inferences are viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the use of self-serving assertions, without factual support in the record,

4

will not defeat a motion for summary judgment. *James v. Sheahan*, 137 F.3d 1003, 1006 (7th Cir.1998). Instead, the party opposing summary judgment must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. Where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," there can be no genuine issue as to any material fact. *Celotex*, 477 U.S. at 322-23.

### III. Analysis

Cruz's complaint is confusing. Cruz alleges an independent claim that GSA intentionally discriminated against her because she was "regarded as being mentally ill." But being regarded as having a disability only demonstrates that Cruz is an individual with a disability for the purposes of the ADA, not that she suffered discrimination. *See* 42 U.S.C. § 12102(2). The ADA provides that the term "discriminate" includes not only the disparate treatment of an employee because of that disability but also the failure to make reasonable accommodations to the physical or mental limitations of an otherwise qualified individual. *See* 42 U.S.C. § 12112(b)(5)(A); *Rauen v. United States Tobacco Mfg. Ltd.*, 319 F.3d 891, 895-96 (7th Cir. 2003); *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1283 (7th Cir. 1996). A failure to accommodate claim is separate and distinct from a claim of disparate treatment under the ADA. *Green v. National Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir.1999); *Weigel v. Target Stores*, 122 F.3d 461, 464 (7th Cir. 1997). Cruz fails to allege any disparate treatment in connection with her claim that GSA regarded her disabled, other than its failure to accommodate her disability by allowing her to work at home. Thus the Court will treat Cruz's claims that the GSA discriminated against her by failing to accommodate her disability and by "regarding her as being mentally ill" as elements of a single claim of discrimination on the

grounds that GSA failed to accommodate her disability. Cruz also alleges that GSA retaliated against her for filing an EEO complaint.

A.  *Failure to Accommodate*

According to Cruz, GSA failed to provide her with a reasonable accommodation for her disability, intermittent and debilitating migraine headaches. The ADA makes it unlawful for employers to fail to make reasonable accommodations to the known physical or mental disabilities of an otherwise qualified individual. 42 U.S.C. § 12112(b)(5)(A); *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001). As a threshold requirement, a plaintiff must first establish that she has a disability as defined by the ADA. Disability is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). For purposes of this motion, the parties do not dispute that Cruz is a person with a disability.

A plaintiff must also demonstrate that she is qualified for the position in question. An individual is qualified if she can perform the essential functions of the position held or desired, with or without reasonable accommodation. *Winfrey v. City of Chicago*, 259 F.3d 610, 615 (7th Cir. 2001); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir.1996). Once a plaintiff has demonstrated that she is a qualified individual with a disability, she must then demonstrate that the defendant knew about the disability and still failed to offer a reasonable accommodation. *Rauen*, 319 F.3d at 895-96; *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1032 (7th Cir.1999).

The parties dispute whether Cruz was a qualified person within the meaning of the ADA. GSA argues that Cruz cannot demonstrate that she is qualified for the position because of her excessive absenteeism. It is true that the Seventh Circuit has often commented that "attendance

at the job site is a basic requirement of most jobs." *Waggoner v. Olin Corp.*, 169 F.3d 481, 484 (7th Cir. 1999); *see also Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1007 (7th Cir. 2001); *E.E.O.C. v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 950 (7th Cir. 2001) (en banc); *Corder v. Lucent Tech.*, 162 F.2d 924, 928 (7th Cir. 1998); *Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1003 (7th Cir. 1998). It is undisputed that Cruz's attendance was poor — she averaged 57.25 days away from work per calendar year (over 25 days of which was leave without pay). Cruz contends, however, that with the accommodation of working at home she would have been able to fulfill the basic job requirements of her position and thus was a qualified person with a disability. In support, Cruz points to the reports of both her doctor and a GSA expert doctor, who suggested that Cruz's migraine headaches interfered with her ability to travel to work on a regular basis. On the other hand, GSA submitted evidence that Cruz's position as a contract specialist required her presence at the work site. Cruz's supervisor, Mary Kennedy, informed Cruz in 1996 that the majority of the duties of a contract specialist required the individual to be on-site in order to have access to contract files, computer programs and to receive input from other contract specialists. But Kennedy *did consider* the possibility of allowing Cruz the opportunity to work at home one day per week (roughly the same amount of time that Cruz was absent from her position during the time period in question), suggesting that attendance at the job was not necessarily an essential requirement of Cruz's contract specialist position. When viewed in the light most favorable to Cruz, GSA's consideration of the possibility of allowing Cruz to work at home defeats its argument that daily job attendance was an essential requirement of Cruz's contract specialist position. Because Cruz submitted evidence to suggest that her migraine headaches affected her absences and that she could perform the essential functions of her position if allowed to work at home, summary judgment on this ground is not proper.

GSA also argues that summary judgment in its favor is proper because it did offer Cruz many reasonable accommodations. The Court agrees. In 1996, Mary Kennedy offered Cruz the opportunity to work at home one day a week, if Cruz improved her attendance. Cruz declined the offer. Cruz insists that Kennedy's offer was not a reasonable accommodation because she desired to work at home for three days per week. In 1999 GSA offered Cruz the opportunity to transfer to the Milwaukee field office where she could work at home three days a week. Cruz again declined, insisting that this accommodation was not reasonable because her migraine headaches made her dependent on public transportation. The ADA does not require the employer to give the employee precisely the accommodation she requests. It requires only that the employer offer a *reasonable* accommodation. *Rehling v. City of Chicago*, 207 F.3d 1009, 1015 (7th Cir. 2000); *Malabarba v. Chicago Tribune Co.*, 149 F.3d 690, 699 (7th Cir. 1998). Whether a requested accommodation is reasonable is a highly fact-specific inquiry and requires balancing the needs of the parties. *Rauen*, 319 F.3d at 896. The Seventh Circuit has observed many times that working at home is rarely a reasonable accommodation because "most jobs require the kind of teamwork, personal interaction, and supervision that simply cannot be had in a home office situation." *Id.*; *see also Yellow Freight Sys., Inc.*, 253 F.3d at 948-49; *Vande Zande v. Wisconsin Dep't of Admin.*, 44 F.3d 538, 544-45 (7th Cir. 1995). In this case, Cruz submits no evidence — other than her own insistence that working at home was the only way to accommodate her disability — that GSA failed to offer her a reasonable accommodation.

Even if GSA's offer to allow Cruz to work at home one day per week was not a reasonable accommodation it offered other reasonable accommodations: transferring to a less stressful team to reduce the frequency of her headaches; altering her working hours to reduce the stress of her

8

commute; and reducing her work-day to decrease her level of stress. Cruz rejected each of these proposed accommodations. The ADA states "reasonable accommodations" may include "job restructuring, part-time or modified work schedules, or reassignment to vacant positions." 42 U.S.C. § 12111(9)(B). Each of GSA's proposed accommodations attempted to reduce Cruz's level of stress, which she suggested contributed to her headaches and falls within the scope of the ADA's description of "reasonable accommodations." Cruz, however, insists that the only reasonable accommodation would have been to allow her to work at home, without transferring, three days a week. Only in extraordinary cases can an employee create a triable issue from the employer's failure to allow the employee to work at home. *Vande Zande*, 44 F.3d 544-45. This is not such a case. Cruz cannot even establish that her desired accommodation — working at home three days a week — would address the problems caused by her migraine headaches. According to Cruz, her migraine headaches are intermittent and unpredictable and whenever she has a migraine headache, she is unable to work. But having a migraine headache would cause Cruz to be unable to work whether she was at the work site or at home. Working from home would neither lighten Cruz's workload nor alter her start time. Indeed the only resulting benefit of Cruz's proposed accommodation is the shortening of her commute time, which according to Cruz would reduce her level of stress and thus reduce the frequence of her headaches. But the length of Cruz's commute is the result of her choice to live in the suburbs, rather than the result of any disabling condition. GSA offered several alternatives that fell short of Cruz's desire to work at home three days a week. Cruz has submitted no evidence to suggest that any of these accommodations were not reasonable and instead insists that allowing her to spend the bulk of her hours at home was the only reasonable accommodation available. The Court finds that GSA offered Cruz several reasonable accommodations for her

9

disability and therefore GRANTS summary judgment in favor of the Defendant with regard to her failure to accommodate claim.

B.  *Retaliation*

Cruz also alleges that GSA retaliated against her after she filed an EEOC complaint against it regarding its failure to accommodate her. GSA argues that to succeed on her retaliation claim, Cruz must demonstrate that she engaged in a statutorily protected activity, that she suffered an adverse employment action, and that a casual connections exists between the two. (Def.'s Mem. Supp. Summ. J. at 16) (citing *Smart v. Ball St. Univ.*, 89 F.3d 437 (7th Cir. 1996)). The Seventh Circuit, however, recently relaxed the standard of establishing a *prima facie* case of retaliation, eliminating the "causal link" requirement. *Stone v. City of Indianapolis*, 281 F.3d 640 (7th Cir. 2002); *see also Rogers v. City of Chicago*, 320 F.3d 748, 754-55 (7th Cir. 2003). *Stone* allows plaintiffs to proceed under a variation of the familiar burden-shifting method found in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *Stone*, a plaintiff can establish a *prima facie* case of retaliation by demonstrating that: (1) she engaged in a statutorily protected activity; (2) was meeting her employer's legitimate expectations; (3) suffered an adverse employment action; and (4) other employees who did not engage in a statutorily protected activity were not subjected to an adverse employment action. *Stone*, 281 F.3d at 644; *see also Rogers*, 320 F.3d at 754-55. Once a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to present unrebutted evidence of a noninvidiuous reason for the adverse action. *Stone*, 281 F.3d at 544. GSA's formulation of the rule, however, does not affect their motion, as they argue only that Cruz fails to establish an adverse employment action.

10

Cruz argues that after she made her request to work at home and after she filed her EEOC complaint, GSA supervisors began harassing her, "giving [her] unreasonably short deadlines, scrutinizing her, questioning her veracity, embarrassing her . . ., and treating her like a child." In her brief, Cruz cites *Oest v. Illinois Dept. of Corr.*, 240 F.3d 605 (7th Cir. 2001) and *Hunt-Golliday v. Metropolitan Water*, 104 F.3d 1004 (7th Cir. 1997) for the principle that harassment that occurs after a statutorily protected activity can establish that there was a causal link between the protected activity and an adverse employment action. Cruz's argument is misdirected. GSA never argues that Cruz cannot demonstrate a "causul link" between her activity and an adverse employment action. Instead, it argues only that Cruz never established that she suffered an adverse employment action. In any event, as noted above, *Stone* eliminates the need for Cruz to establish a causal link between her protected activity and an adverse employment action.

Cruz does not suggest that the harassment rose to the level of an adverse employment action and instead argues that she suffered adverse employment actions when: (1) GSA refused to allow her to participate in the Flexiplace Program; and (2) GSA transferred her to the Property Development Branch. Not everything that makes an employee unhappy is an actionable adverse action. *Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 753 (7th Cir.2002); *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996). Instead, adverse employment actions must effect a materially adverse change in the terms, conditions, or privileges of employment — such as a termination, demotion, material loss of benefits, or significantly diminished responsibilities. *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1115 (7th Cir. 2001); *Bell v. EPA*, 232 F.3d 546, 555 (7th Cir.2000); *Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir. 1996). The Court need not address the question of whether GSA's refusal to allow Cruz to participate in the Flexiplace Program is an adverse action for two reasons. First, GSA

11

initially denied Cruz the opportunity to participate in the program *before* she filed the EEOC charge. A decision that occurs prior to the statutorily protected activity cannot form the basis of a retaliation claim. Second, after Cruz filed her EEOC complaint (and this lawsuit) GSA ultimately *did allow* Cruz to participate in the program. Rather than retaliating against her by continuing to deny her requests to work at home, GSA instead granted them.

Cruz also argues that the GSA's decision to transfer her to the Property Development Division was an adverse employment action. A change in job title or alteration of job responsibilities, when similar responsibilities and identical salary and benefits are retained, does not constitute an adverse employment action. *Grayson v. City of Chicago*, 317 F.3d 745, 750 (7th Cir. 2002); *Hermreiter v. Chicago Housing Authority*, 315 F.3d 742, 745 (7th Cir. 2002) (transfer was not adverse employment action); *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir.1993). Cruz does not allege that the transfer caused her to lose salary or in any way diminished her job responsibilities. Instead, she alleges only that it prevented her from participating in the Flexiplace Program and that she was denied "training." As noted earlier, Cruz has been allowed to participate in the Flexiplace Program, and her current participation in the program defeats her claim that her transfer deprived her of a tangible benefit. Further, Cruz never specifies precisely what training she missed and her cursory argument, unsupported by any citation to the record or law, is insufficient to defeat a motion for summary judgment. *Greer v. Board of Educ. of City of Chicago, Ill.*, 267 F.3d 723, 727 (7th Cir. 2001) (district court not obligated to scour the record looking for factual disputes). In short, Cruz has not been disciplined, demoted, or terminated; has not been denied wage or employee benefit increases or been given less opportunity for such increases; and has not had her job responsibilities reduced or been made to perform more menial tasks. Accordingly, the Court

finds that she has not suffered any adverse employment action. Thus, the Defendant's motion for summary judgment on Cruz's retaliation claim is GRANTED.

IT IS SO ORDERED.

_____
The Honorable Amy J. St. Eve
United States District Court

DATED:     March 28, 2003